IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEONARD CLARK,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Petitioner,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Case No. 07 C 5224
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Respondent.　　　　　　　　)

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Leonard Clark's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Clark's Section 2255 motion.

**BACKGROUND**

In a superceding indictment, the government charged Clark, Juan Cruz, and Jose Olaquez – along with six other members of a Chicago street gang called the West Town Latin Kings – with conspiracy to distribute and to possess with intent to distribute in excess of 50 grams of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 846 (Count I). The government also charged Clark with distribution of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Counts III, IV, & V). On April 13, 2004, Clark pleaded guilty to all counts of the indictment against him without the benefit of a plea agreement. The Court subsequently sentenced Clark to 360 months imprisonment. Clark appealed his sentence and the Seventh Circuit affirmed the Court's sentencing determinations. *See United States v. Clark,* 191 Fed.Appx. 491 (7th Cir. 2006).

The Seventh Circuit discussed the following facts concerning Clark and the charged conspiracy:

> The conspiracy lasted from 1998 through 2003, but we are concerned only with a short window between February 2001 and July 2001 when Clark and Cruz led the conspiracy and Olaquez participated. Clark was in charge, he held the title of "Inca," and Cruz was his second-in-command, with the title "Cacique." The gang sold crack on a daily basis during this stretch – at least fifteen members selling regularly – and held meetings to discuss sales and security. Clark and Cruz led the meetings. Every so often members of the gang sold "Nation Packs," baggies with ten rocks of crack, and the proceeds went to the gang. Codefendant Angel Serrano admitted his involvement in selling more than 1.5 kilograms of crack during the time Clark and Cruz were in charge. During the same time, codefendant David Saez dealt between 500 grams and 1.5 kilograms of crack. Codefendants Martinez, Enriquez, and Mendez also admitted dealing crack during this time.
>
> Clark and Cruz pleaded guilty. At sentencing the district judge found that because Clark and Cruz led the conspiracy, even if only for a short time, they could be held responsible for more than 1.5 kilograms of crack, since their coconspirators confessed to moving at least that much crack. That quantity of crack, combined with their criminal histories, put each man in an advisory sentencing guidelines range of 360 months to life. The judge sentenced each to 360 months for his role in the conspiracy.

*United States v. Clark,* 191 Fed.Appx. 491, 494 (7th Cir. 2006).

## **LEGAL STANDARD**

Relief under Section 2255 "is reserved for extraordinary situations." *Hays v. United States,* 397 F.3d 564, 566 (7th Cir. 2005). A district court will only grant a Section 2255 motion to vacate, set aside or correct a sentence if the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id.* at 566-67 (citations and internal quotations omitted). A Section 2255 motion is not a substitute for a direct criminal appeal – it is not the means by which a convicted defendant may appeal the

same claims a second time. *See Coleman v. United States,* 318 F.3d 754, 760 (7th Cir. 2003); *see also Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). Accordingly, if a Section 2255 petitioner does not raise a claim in his direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller v. United States,* 398 F.3d 644, 648 (7th Cir. 2005), that enforcing the procedural default would lead to a "fundamental miscarriage of justice," *see Anderson v. Benik,* 471 F.3d 811, 815 (7th Cir. 2006), or a change of circumstances involving facts or law. *See Varela,* 481 F.3d at 935-36. Because claims of ineffective assistance of counsel usually involve evidence outside the record, these claims may be brought for the first time in Section 2255 motions. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Ballinger v. United States,* 379 F.3d 427, 429-30 (7th Cir. 2004).

## ANALYSIS

Construing Clark's pro se Section 2255 motion liberally, *see Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006), Clark claims that he was denied constitutionally effective assistance of trial and appellate counsel.[1] *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel under *Strickland*, Clark must show (1) his attorney's performance "fell below an objective standard of

---

[1] For the first time in his reply brief, Clark brings an unsubstantiated "double jeopardy" claim. Because Clark brings this claim for the first time in his reply brief, it is waived. *See Amerson v. Farrey* 492 F.3d 848, 852 (7th Cir. 2007) ("Arguments raised for the first time in a reply brief are waived.").

3

reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 688, 694. If Clark fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also Amerson v. Farrey,* 492 F.3d 848, 851 (7th Cir. 2007). "[B]ecause counsel is presumed effective, a party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." *Shell v. United States,* 448 F.3d 951, 955 (7th Cir. 2006) (citation omitted).

In the context of a guilty plea, the Supreme Court has articulated that "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received was constitutionally ineffective." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quotations omitted). In this context, under the prejudice prong of the *Strickland* standard, Clark must show "that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 716-17 (7th Cir. 2006) (citing *Hill,* 474 U.S. at 57-59).

**I.     Trial Counsel**

In his Section 2255 motion, Clark contends that his trial counsel was constitutionally ineffective because: (1) counsel failed to understand the nature of charges against him and the effect of the sentencing guidelines in relation to his guilty plea; (2) Clark's entry of his guilty plea was unknowingly and unintelligently made due to trial counsels' failure to advise him that he could be sentenced on the advisory system contemplated in *Booker*; (3) Clark would not have

4

entered a guilty plea if his trial counsel had informed him that under the advisory system the Court could consider non-factual, non-relevant conduct[2]; (4) counsel was ineffective because she never informed Clark that he had the option of withdrawing his guilty plea upon her failure to inform him of the effects of *Blakely* and *Booker*; and (5) counsel was ineffective because she failed to negotiate a guilty plea to just one count of the indictment.

The Court turns to Clark's plea hearing before examining Clark's claims. On April 13, 2004, Clark pleaded guilty to four counts of the superseding indictment as follows:

> The Court: Mr. Clark, before I can accept your plea, I have to determine several things. I have to determine that you are competent to plead guilty at this time; that you have had the assistance of counsel; that you understand what your trial rights are and that you will be waiving them by pleading guilty this morning; that you understand the nature of the charges against you; that your plea is a voluntary act on your part; and, that there is a sufficient factual basis for your plea.
>
> Do you understand that, sir?
>
> Mr. Clark: Yes, ma'am.
>
> The Court: If at any point this morning, Mr. Clark, you feel like you need additional time to talk to your attorney, please let me know and I am happy to interrupt the proceedings or give you whatever time you need. Okay?
>
> Mr. Clark: Yes, ma'am.
>
> \*\*\*
>
> The Court: Have you had enough time to talk to your attorney about this matter?
>
> Mr. Clark: Yes ma'am.

---

[2] Clark contends that the government ambushed him at sentencing by discussing the underlying conspiracy and the West Town Latin Kings' use of firearms. The government's discussion of the conspiracy was not "non-relevant" or "non-factual" conduct, but was the factual basis for Count I of the superseding indictment.

| | |
|---|---|
| The Court: | Are you satisfied with Ms. Foley's advice and efforts on your behalf, sir? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | You're offering to plead guilty to Counts 1, 3, 4, and 5 of the superseding indictment. Have you read Counts 1, 3, 4, and 5 of the superseding indictment? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | Has your lawyer explained to you the nature of the charges in those counts? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | Mr. Clark, do you understand the nature of the charges in Counts 1, 3, 4 and 5 of the superseding indictment? |
| Mr. Clark: | Yes ma'am. |

\*\*\*

| | |
|---|---|
| The Court: | If you plead guilty and I accept your plea, Mr. Clark, there will not be a trial in your case and I will enter a finding of guilty and sentence you on the basis of your plea after considering a presentence investigation report, after hearing from your lawyer, and after hearing from the government, and after hearing from you, if you choose to speak.<br><br>Do you understand that, sir? |
| Mr. Clark: | Yes. |
| The Court: | And you understand that there will not be a trial in this case if you plead guilty? |
| Mr. Clark. | Yes. |
| The Court: | And you are waiving all of the trial rights that I have explained to you this morning; do you understand that? |
| Mr. Clark: | Yes. |

\*\*\*

| | |
|---|---|
| The Court: | Mr. Clark, do you understand that the statute that you are offering to plead guilty to carries a minimum mandatory sentence of ten years in prison? |

Mr. Clark:     Yes, ma'am.

***

The Court:    And the Court, under the statute, can sentence you up to life in prison. Do you understand that, sir?

Mr. Clark:     Yes, ma'am.

***

The Court:    Your sentence will be governed in part by the United States Sentencing Guidelines.

Do you understand that?

Mr. Clark:     Yes, ma'am.

The Court:    Have you discussed these with your attorney?

Mr. Clark:     Yes ma'am.

The Court:    Ms. Foley, have you done any preliminary guideline calculations in this case?

Ms. Foley:    Judge, if – I believe it's the government's position that the defendant would be – it's 360 to life – he's a criminal history V, I believe.

The Court:    Mr. Porter?

Mr. Porter:   Judge, it's the government's view that defendant would start at a base level of 38 because of the drug quantity involved in this case; he would receive a two-level enhancement – or we would certainly seek one – because of the use of a weapon in furtherance of the drug crime; and we believe he would receive a four-level enhancement for leader/organizer, which would put him at a – off the charts, basically.

So that had he gone to trial, your Honor would have had no choice; were he convicted, he'd be receiving mandatory life. With a three-level adjustment for acceptance, the United States believes that he's at a Level – essentially, a Level – 41 with a criminal history category of at least V, I believe. So, he would be in the range of 360 to life.

***

| | |
|---|---|
| The Court: | Mr. Clark, the government and your attorney have done some preliminary guideline calculations in this case. Do you understand that? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | And I say these are preliminary because it will be up to the Court to determine what the appropriate guidelines calculations are in this case. Do you understand that? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | And it will be up to the Court to determine what your sentence is in this case. Do you understand that, sir? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | Under the preliminary guideline calculations that have been conducted, by pleading guilty, you will have an offense level of 41, and your criminal history category is at least a V and possibly a VI. Do you understand that, sir? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | And it is the government's position that if you were to proceed to trial and be convicted, that you would have to receive a mandatory life sentence. Do you understand that, sir? |
| Mr. Clark: | Yes ma'am. |
| The Court: | But, again, these are preliminary guideline calculations. It will be up to the Court to determine what the applicable guidelines are and what your sentence in this case is. Do you understand that, sir? |
| Mr. Clark: | Yes, ma'am. |
| The Court: | Mr. Clark, has anybody forced you in any way to plead guilty? |
| Mr. Clark: | No, ma'am. |
| The Court: | Has anybody threatened you in any way to cause you to plead guilty, sir? |
| Mr. Clark: | No, ma'am. |

| | | |
|---|---|---|
| The Court: | Is your decision to plead guilty entirely voluntary on your part after discussing this with Ms. Foley? | |
| Mr. Clark: | Yes, ma'am. | |
| The Court: | Have any promises been made to you by anybody regarding sentencing other than what we just discussed? | |
| Mr. Clark: | No, ma'am. | |
| The Court: | And do you understand, Mr. Clark, that it is your decision and your decision alone to plead guilty regardless of any advice you have received from anybody? | |
| Mr. Clark: | Yes, ma'am. | |
| The Court: | And, again, you understand that it will be my final decision as to what your sentence in the case will be, sir? | |
| Mr. Clark: | Yes, ma'am. | |

(R. 11-2, April 13, 2004, Plea Hr'g Tr., at 3-18.)

### A. Nature of Charges

Clark's first ineffective assistance of trial counsel claim is that his counsel did not understand the nature of the charges against him based on the following interchange at Clark's plea hearing:

| | |
|---|---|
| The Court: | Ms. Foley, have you done any preliminary guideline calculations in this case? |
| Ms. Foley: | Judge, if – I believe it's the government's position that the defendant would be – it's 360 to life – he's a criminal history V, I believe. |

Clark argues that this interchange is "prima facie evidence attorney Hickstein-Foley did not have a clue as to petitioner's lack of participation in the entire time frame and scope of conduct of the conspiracy count." (R. 9-1, Mem. in Support of Section 2255 Mot., at 4-5.)

9

Clark's argument is misplaced. First, Ms. Foley's statements regarding his guideline range were accurate. More importantly, Ms. Foley's statement does not reflect that she did not understand the nature of the charges against Clark and Ms. Foley also plainly stated that it was the government's position that Clark's sentencing range was 360 to life. At his plea hearing, Clark stated that he had enough time to talk to his attorney about the counts in the indictment, he was satisfied with Ms. Foley's advice and efforts on his behalf, and he understood the nature of the charges in Counts 1, 3, 4 and 5 of the superseding indictment. Finally, the Court clearly advised Clark about the charges he faced and the mandatory minimum and maximum statutory penalties and Clark stated that he had no questions to the charges in his superseding indictment.

Based on Clark's admissions at his plea hearing, he has not established the performance prong of the *Strickland* standard. Specifically, because Clark admits that his counsel explained the nature of the charges in the superseding indictment and that he understood the charges, he has failed to overcome the presumption that his counsel's conduct is within the wide range of reasonable professional assistance. *Id.* at 688-89 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). In other words, Clark has failed to demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Raygoza v. Hulick,* 474 F.3d 958, 962 (7th Cir. 2007). Therefore, Clark's first ineffective assistance of counsel claim fails.

### B. Sentencing Guidelines

Clark's next three claims involve his trial counsel's alleged failure to inform him that he would be subject to the advisory sentencing guidelines. In essence, Clark is arguing that his trial

counsel was ineffective because she failed to predict that the sentencing guidelines would become advisory pursuant to *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) – cases that the Supreme Court decided after Clark's guilty plea, but before his sentencing on January 28, 2005.

As the Seventh Circuit instructs, a "reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty." *Julian v. Bartley,* 495 F.3d 487, 495 (7th Cir. 2007). On the other hand, there is no legal authority supporting Clark's contention that an attorney is constitutionally ineffective for failing to predict future Supreme Court rulings when advising her client about pleading guilty and the consequent sentencing exposure. Moreover, trial counsel filed supplemental sentencing papers regarding the changes in the law after *Blakely* and *Booker* before Clark's sentencing on January 28, 2005. (*See* 03 CR 621-1, R. 277-1, 291-1, 301-1, & R. 326-1.) Clark's argument that his trial counsel was ineffective for failing to foresee the Supreme Court's decisions in *Blakely* and *Booker* is nonsensical and fails to establish either the performance or prejudice prong under the *Strickland* standard.

### C. Negotiation of Plea Agreement

Next, Clark contends that his trial counsel was constitutionally ineffective because she failed to negotiate a plea agreement to just one count of the superseding indictment – instead of four counts – and that he should not have been exposed to more than 20 years' imprisonment. Again, Clark contends that his attorney should have anticipated that the sentencing guidelines would become advisory before his sentencing. As discussed, this argument makes no sense.

11

Even if Clark had pleaded guilty to Count I, he would have face life imprisonment as the maximum punishment under the statute. Had Clark been convicted at trial, he also would have faced life imprisonment. Instead, he pleaded guilty and the Court sentenced him to 360 months imprisonment – the low end of the applicable advisory guideline range. Under these circumstances, Clark's argument does not overcome the presumption that his counsel's conduct was within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 688-89. In addition, Clark does not establish the *Strickland* prejudice prong, namely, "that there is a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial." *Bethel*, 458 F.3d at 720. Therefore, this claim fails.

### D. Cumulative Errors

The Court also rejects Clark's argument that trial counsel's cumulative errors constitute ineffective assistance of counsel. *See Goodman v. Bertrand,* 467 F.3d 1022, 1030 (7th Cir. 2006). Viewing the record as a whole, trial counsel filed numerous meritorious motions on Clark's behalf, explained to Clark the nature of the charges in Counts 1, 3, 4 and 5 of the superseding indictment, negotiated a favorable plea agreement for Clark, and notified the Court of Clark's sentencing position after the changes in law pursuant to *Booker* and *Blakely*. As such, Clark's contention that trial counsel's cumulative errors constitute constitutionally ineffective assistance of counsel is without merit.

## II. Appellate Counsel

Finally, Clark brings an ineffective assistance of appellate counsel claim based on appellate counsel's failure to present arguments concerning the monetary penalty of $5,000 that was part of his sentence. Under the *Strickland* performance prong, an appellate counsel's

performance is deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel did raise. *See Sanders v. Cotton,* 398 F.3d 572, 585 (7th Cir. 2005). To establish the *Strickland* prejudice prong, Clark must show that there is a reasonable probability that appellate counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *See Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003).

On appeal, Clark's counsel argued that the Court erroneously calculated the drug amounts attributable to Clark because the government did not establish that he was involved in the conspiracy for more than a few months. (*See* Appeal No. 05-1316/05-1693, Joint Appellant Brief, at 3, 8-9, 16-23.) First, challenging the $5,000 penalty is not an obviously or clearly stronger claim than appellate counsel challenging the underlying drug amounts. *See Sanders,* 398 F.3d at 585. Second, the issue of the $5,000 fine would not have resulted in the reversal of Clark's conviction or an order for a new trial, even if it were a "dead bang winner" as Clark argues. *See Lee,* 328 F.3d at 901. Put differently, Clark has failed to establish that there is a reasonable probability that the outcome of his appeal would have been different had his appellate counsel raised the issue of his $5,000 fine. *See id.* Therefore, Clark's ineffective assistance of appellate counsel claim fails.

## **CONCLUSION**

For these reasons, the Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In addition, the Court denies Petitioner's motions for the Court to "take judicial notice of non-waiver via affidavit filing of attorney client privileged information" as moot.

**Dated:** November 30, 2007

                         **ENTERED**

                         _____
                         **AMY J. ST. EVE**
                         **United States District Court Judge**